**FOX ROTHSCHILD LLP**
By: Ian D. Meklinsky, Esq.
Jonathan D. Ash, Esq.
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, New Jersey 08648-2311
(609) 896-3600
*Attorneys for Plaintiffs Precision Medicine Group, LLC and*
*Precision for Value, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRECISION MEDICINE GROUP, LLC and PRECISION FOR VALUE, LLC, <br><br> PLAINTIFFS, <br><br> v. <br><br> DREW BOWDEN, GREG CONDIT, JENNIFER GAREY, BILL KELLY, DAVID MELVIN, PATTY ROYCE, ALEXANDRA VENDITTE, and NAVISYNC, LLC, <br><br> DEFENDANTS. | CIVIL ACTION <br><br> **COMPLAINT AND JURY DEMAND** <br><br> **(Document Filed Electronically)** <br><br> JURY TRIAL DEMANDED |

Plaintiffs Precision Medicine Group, LLC and Precision for Value, LLC (collectively "Precision"), by way of Complaint against defendants Drew Bowden, Greg Condit, Jennifer Garey, Bill Kelly, David Melvin, Patty Royce, Alexandra Venditte, (collectively the "Employees") and NaviSync, LLC ("NaviSync") (NaviSync and the Employees will be collectively referred to as the ("Defendants"), hereby alleges and states as follows:

### INTRODUCTION

1. This matter involves breaches of contractual and common law duties, computer fraud, and civil conspiracy, among other claims, all committed by the Employees when they

planned a willful looting of Precision's property to assist their new employer NaviSync to compete with Precision and cause it harm.

2.     NaviSync, for their part, systematically targeted these seven (7) Employees for the purpose of harming Precision and impeding its operations.

3.     Shortly before leaving Precision, the Employees improperly deleted their emails to cover up their ongoing conspiracy and copied thousands of Precision's documents (including trade secrets and confidential information) to external hard drives/storage devices, all without authorization, for future use in their employment with a direct competitor, NaviSync.

4.     Upon information and belief, the Employees took these unlawful actions at the direction of and with the direct knowledge of NaviSync.

5.     As a result of Defendants' unlawful actions, Precision has suffered financial damages, harm to its competitive position, and improper misappropriation of its trade secrets. Precision will continue to suffer irreparable harm if Defendants are not enjoined from engaging in unlawful activity.

## THE PARTIES

6.     Plaintiff Precision Medicine Group, LLC is a Delaware limited liability company and Precision for Value, LLC is a New Jersey limited liability company, both headquartered at 2 Bethesda Metro Center, Suite 850, Bethesda, MD, 20814.

7.     Defendant Bowden is a former employee of Precision who, upon information and belief, resides at 7 Bloomingdale Drive, Apt. 202, Hillsborough, NJ 08844.

8.     Defendant Condit is a former employee of Precision who, upon information and belief, resides at 111 East Dewey Avenue, Apt. 414, Wharton, NJ 07885.

9.     Defendant Garey is a former employee of Precision who, upon information and belief, resides at 39 Jamestown Road, Basking Ridge, NJ 07920.

10.     Defendant Kelly is a former employee of Precision who, upon information and belief, resides at 15 Black Watch Trail, Morristown, NJ 07960.

11.     Defendant Melvin is a former employee of Precision who, upon information and belief, resides at 21 Cromwell Drive, Chester, NJ 07930.

12.     Defendant Royce is a former employee of Precision who, upon information and belief, resides at 200 Deerfield Terrace, Mahwah, NJ 07430.

13.     Defendant Venditte is a former employee of Precision who, upon information and belief, resides at 10 Hidden Acres Drive, Kinnelon, NJ 07405.

14.     Defendant NaviSync is a New Jersey limited liability company engaged in the same business activities as Precision and has a principle place of business located at 25 B Vreeland Road Suite 203, Florham Park, NJ 07932.

## JURISDICTION AND VENUE

15.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 based upon a federal question arising under 18 U.S.C. 1030 et seq.  The Court has supplemental jurisdiction over certain claims pursuant to 28 U.S.C. § 1367.

16.     The Court has personal jurisdiction over Defendants by virtue of their residence in and doing business in this District.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because all Defendants are residents of the State of New Jersey and each Defendant resides in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND FACTS

18.    The Employees all began their employment with Precision at various times, but most left their employment within six weeks of each other, and began working for NaviSync shortly thereafter.

19.    While in its employ, Precision provided the Employees with training, professional development opportunities, and access to Precision's and/or Precision's customer's proprietary information, market strategies, business processes, customer lists, customer relationships, pricing information, and other trade secrets and confidential information.  In their respective positions, the Employees also received access to additional confidential, proprietary, and trade secret information to reflect their particular responsibilities.

20.    Precision has taken reasonable steps to protect and maintain the secrecy of its trade secrets and other confidential information, including, but not limited to, requiring all of the Employees to sign "Employee Confidentiality and Non-Solicitation Agreements" (the "Agreements").

21.    The Agreements preclude the Employees both during and following the termination of their employment with Precision from conveying, publishing or otherwise making available to any third party the confidential information and property of Precision.

22.    The Agreements also prohibit the Employees for a period of one (1) year following the termination of their employment from Precision from, among other things, directly or indirectly: (a) soliciting, attempting to solicit, or causing to be solicited any party who (1) was a customer of the Precision during their employment with Precision and/or (2) was actively solicited by Precision within the 12 months period ending on the date of their separation from Precision; (b) soliciting, attempting to solicit and/or causing to be solicited any party who (1)

ACTIVE\32423127.v1-1/24/17

was a contractor/supplier of Precision during their employment with Precision and/or (2) was actively solicited by Precision within the 12 months period ending on the date of their separation from Precision; (c) hiring or employing any employee or other person associated with Precision or inducing or attempting to induce any employee or other person associated with Precision to leave the employ or cease doing business with Precision; and/or (d) inducing or attempting to induce any customer, supplier, manufacturer, association, organization, vendor or any other person or entity to cease doing business with Precision.

23.     The Agreements also prohibit the Employees from taking any action, directly or indirectly, which are contrary to the interests of Precision or from making any disparaging, untrue, negative, derogatory or defamatory remarks concerning Precision or its business practices.

24.     While employed by Precision, the Employees had substantial access to Precision's business processes and highly confidential and proprietary information regarding Precision's services.  As a leader in the industry for approximately fifteen years, Precision has spent time, energy, and money to develop these processes.  These materials include historical data concerning sales to its customers, invoices to its customers, upcoming potential opportunities, technical proposals and other methods for developing and cultivating a customer relationship, among other similar information.

25.     Immediately prior to their departure, each of the Employees working in concert deleted a substantial amount of their email from their Precision accounts, thereby destroying valuable company information in contravention of Precision's policies and procedures and in contravention of the duty of loyalty owed to their employer.

26. In addition to deleting/destroying Precision's data, prior to leaving Precision, each of the Employees systematically copied Precision's sensitive trade secrets and proprietary information onto external hard drives/storage devices. Included in these files were standard operating procedures, business processes, forms and templates, position descriptions, organization charts, responsibility matrices, customer lists, pricing lists, contact information for principal suppliers, detailed reports of key client relationships, and detailed profiles of Precision's client engagements. Additionally, forensic evidence suggests that the Employees downloaded multiple files containing Precision's confidential and trade secret information on many occasions prior to their departure which they retained when they resigned.

27. These documents are information from which Precision derives actual or potential independent economic value from their not being generally known to outside parties, and their not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use. These documents are trade secrets and confidential.

28. Almost immediately following their departure, each of the Employees began working for NaviSync, a competitor of Precision that opened in or around 2013. NaviSync needed these materials to effectively compete with Precision and gain an unfair advantage.

29. Upon information and belief, the Employees took these unlawful actions at the direction of their new employer NaviSync for the purpose of assisting them in their new employment.

30. Each of these Employees used their position of trust at Precision to breach their duties of loyalty to Precision in order to benefit their new employer NaviSync or otherwise cause Precision harm.

31. The Employees had no basis for deleting the emails and/or retaining the copies of Precision's trade secrets and sensitive data when they resigned and they did not delete the emails and/or copy the data to storage devices for any legitimate business purpose.

32. The only purpose for the Employees to systematically steal all of Precision's confidential information was to assist NaviSync in competing with Precision.

33. NaviSync knew or should have known that the Employees had access to Precision's confidential information, and that they were obligated to return this information prior to or at the time of their resignation.

34. Upon information and belief, NaviSync encouraged, ratified, and benefited from and/or turned a blind eye to the Employees' taking, possession and use of these documents.

35. NaviSync knew that the confidential information was not available through proper means and that the Employees had improperly acquired the information.

36. The Employees have remained in possession of Precision's documents, including trade secrets, for over one year while working for NaviSync.

37. Upon information and belief, NaviSync and/or its agents were aware or should have been aware of the Employees' misappropriation of Precision's trade secrets and confidential information, ratified this misappropriation, or willfully ignored this misappropriation while accepting the benefit of this misappropriation.

38. By separate letters to each of the Employees, Precision advised the Employees of their obligations under both the Agreements and common law to protect Precision's information from disclosure and demanded that all confidential information belonging to Precision be returned and that the Employees preserve their computers and other electronic devices in the

event of further forensic examination.  Copies of each of these letters were also sent to Kate Peters, then-President of NaviSync.

39.  Precision also sent a separate letter to Kate Peters advising NaviSync of the existence of the Agreements and the Employees' obligations to protect Precision's confidential information.  The letter further advised NaviSync to preserve all electronic devices, including laptops, that may have been used by the Employees so that Precision can ensure that none of its confidential materials were transferred to those laptops or to NaviSync's servers.

40.  After a forensic analysis revealed that Defendant Condit had inserted various USB storage devices into the laptop computer that was assigned to him by Precision, Precision sent him a follow up letter demanding that those USB devices be preserved so that further forensic analysis could be conducted to confirm that Precision's confidential materials were not transferred to other electronic devices.

41.  Rather than preserve the USB devices and return those materials in their current state, Defendant Condit, through his counsel, inserted the USB devices into other computers and intentionally or negligently caused the data and/or metadata on the Precision files to be forensically altered, thereby preventing Precision from conducting a complete analysis as to what may have been done by Defendant Condit with the files.

42.  Once it was discovered the Defendant Condit intentionally or negligently altered the data and/or metadata, Precision immediately advised the Employees not to repeat the same conduct with any other storage device.

43.  Despite this clear instruction, the Employees engaged in the same conduct as to all other storage devices that were returned to Precision, thereby permanently altering the

relevant data and preventing Precision from conducting a full and complete analysis of what the Employees did with Precision's confidential information.

44.    The Employees have also admitted that most, if not all of them, have inserted their storage devices into laptops assigned to them by NaviSync and copied Precision material from their devices to those laptops.

45.    Despite the instruction to NaviSync to secure all of the laptops used by the Employees, NaviSync allowed their continued use and thereby negligently or intentionally caused the forensic data and/or metadata to altered.

46.    As a result of all of the foregoing, Precision has been and continues to be harmed.

<u>COUNT I</u>

**BREACH OF CONTRACT**

47.    Precision repeats and re-alleges the allegations contained in paragraphs 1 through 46 of this Complaint as if set forth fully herein.

48.    The Employees were all parties to the Agreements, which specifically precluded them from conveying, publishing, or otherwise making available to third parties the confidential information and property of Precision as such information is defined in the Agreement.

49.    The Agreements also prohibit them from soliciting Precision's customers, contractors, suppliers, and/or employees or inducing or attempting to induce them to cease doing business with Precision.

50.    The Employees have each breached the Agreements by sharing Precision's confidential information with NaviSync and/or other third parties, by using Precision's confidential materials for the benefit of a competitor, and by soliciting/inducing employees to leave their employ, including between and among the individual defendants.

51.    Precision has been and continues to be harmed by these material breaches.

## COUNT II

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

52.     Precision repeats and re-alleges the allegations contained in paragraphs 1 through 51 of this Complaint as if set forth fully herein.

53.     The Agreements between Precision and the Employees contain an implied covenant of good faith and fair dealing.

54.     The Employees breached the implied covenant of good faith and fair dealing contained in the Agreements by, *inter alia*, maliciously gathering Precision's confidential information for the purpose of disclosing it to third parties including, but not limited to, NaviSync and by deleting/destroying their emails prior to their departure.

55.     As a result of the Employees' breach of the implied covenant of good faith and fair dealing, Precision has suffered, and continues to suffer, damages.

## COUNT III

## BREACH OF DUTY OF LOYALTY

56.     Precision repeats and re-alleges the allegations contained in paragraphs 1 through 55 of this Complaint as if set forth fully herein.

57.     As an employee and agent of Precision, the Employees owed Precision fiduciary duties of good faith, fair dealing, due care, and loyalty.

58.     The Employees breached these duties by committing one or more wrongful acts while still employed by Precision, including but not limited to (1) misappropriating trade secrets, (2) misappropriating and misusing confidential information, (3) disclosing confidential information and trade secrets, (4) improperly and unlawfully accessing and using Precision's computer system, (5) unlawfully taking documents procured as a result of their position with Precision, and/or (6) secretly beginning work for NaviSync while still employed by Precision.

ACTIVE\32423127.v1-1/24/17

59.     The foregoing wrongful acts violated the Employees' duties of good faith, fair dealing, due care, and loyalty.

60.     As a direct and proximate result of the foregoing breaches of fiduciary duties, Precision has suffered and will continue to suffer irreparable harm to its competitive position in the health care consultation and research business, its client/customer relationships, its economic expectancies, its business reputation, and its goodwill.

61.     As a result of the foregoing breaches of fiduciary duties, Precision has been damaged.  Moreover, the Employees have been unjustly enriched as a result of the foregoing breaches of fiduciary duties, and should be ordered to return the salaries that they earned from Precision while committing these wrongful acts.

62.     Upon information and belief, Employees' breaches of these duties have been willful and malicious, warranting punitive damages.

## COUNT IV

### MISAPPROPRIATION OF CONFIDENTIAL AND PROPRIETARY INFORMATION

63.     Precision repeats and re-alleges the allegations contained in paragraphs 1 through 62 of this Complaint as if set forth fully herein.

64.     During their employment with Precision, the Employees had access to various confidential and proprietary materials belonging to Precision.

65.     Precision's confidential and proprietary information include, but are not limited to, its standard operating procedures, business processes, forms, and templates, position descriptions, organization charts, and responsibility matrices, pricing data, client/customer information, and other confidential information.

66.    Precision's confidential and proprietary information are information from which Precision derives actual or potential independent economic value from their not being generally known to outside parties, and their not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

67.    Precision takes reasonable efforts to maintain the secrecy of these confidential and proprietary information using IT security procedures, confidentiality agreements, on-site security, confidentiality policies and other similar measures.

68.    The Defendants misappropriated some or all of these trade secrets, including those described above.   The unauthorized misappropriation of trade secrets in violation of fiduciary duties, and as part of an unlawful conspiracy, constitutes misappropriation by improper means.

69.    The Employees knew that they were not authorized to copy confidential and proprietary information and take them for use after they left Precision, especially on behalf of NaviSync.  The Defendants knew or should have known that Precision did not consent to their copying, use, and/or disclosure of these materials to the Defendants.

70.    Upon information and belief, the Employees used and/or disclosed confidential and proprietary information to others, including NaviSync.  At the time they copied, used, disclosed or obtained Precision's confidential and proprietary information, the Employees knew or should have known that it was obtained by improper and unlawful means including but not limited to the breach of their duties of loyalty to Precision.

71.    The Defendants shared Precision's and/or its customer's confidential and proprietary information with one another.  Each knew or had reason to know that their knowledge or acquisition of Precision's confidential and proprietary information occurred under

circumstances giving rise to a duty to maintain the secrecy, or that they were receiving trade secrets from another who owed such a duty to Precision.

72. NaviSync has acquired the above mentioned trade secrets from the Employees. NaviSync and its executives acquired Precision's confidential and proprietary information by improper means, including by inducing the Employees to breach their duties of loyalty to Precision, to misappropriate Precision's confidential and proprietary information and disclose this information to NaviSync, and to use these materials on behalf of NaviSync.

73. NaviSync acquired Precision's confidential and proprietary information from individual(s) that it knew or should have known acquired these trade secrets through improper means. NaviSync knew or should have known that the Employees did not have Precision's consent to use or disclose its confidential and proprietary information on behalf of NaviSync.

74. Upon information and belief, the Defendants have used Precision's trade secrets to help them compete with Precision. Upon information and belief, Defendants have continued to use Precision's confidential and proprietary information (or items derived therefrom) to continue to compete with Precision.

75. Precision's confidential and proprietary information have tremendous value to Precision and would have immense value to a competitor. Allowing the Defendants to continue to possess, disclose and/or use Precision's confidential and proprietary information would put Precision at a severe and unlawful competitive disadvantage, and would unjustly enrich the Defendants.

76. Precision has no adequate remedy at law to fully redress the continued misappropriation, disclosure, and use of its trade secrets and confidential information. The

Defendants continued misappropriation, disclosure and use of these trade secrets has caused and will continue to cause irreparable harm to Precision.

77.    The Defendants should be permanently enjoined from possession, use and/or disclosure of Precision's confidential and proprietary information.

78.    As a result of the Defendants' misappropriation, Precision has been damaged in an amount to be determined at trial.

## COUNT V

### CIVIL CONSPIRACY

79.    Precision repeats and re-alleges the allegations contained in paragraphs 1 through 78 of this Complaint as if set forth fully herein.

80.    Each of the Defendants acted in concert with one another for the mutually agreed purpose of: (1) misappropriating Precision's and/or its customer's confidential and proprietary information, (2) unlawfully converting Precision's property, (3) breaching or aiding the breach of duties of loyalty to Precision, (4) copying protected files without authorization, (5) deleting/destroying files without authorization, and (6) interfering with Precision's relationships with its clients.

81.    Through their unlawful acts, the Defendants injured Precision's business willfully, intentionally, purposefully, and without lawful justification using unlawful means. The conspirators' wrongful acts and agreement to act in concert to commit these wrongful acts constitutes common law conspiracy.

82.    As a direct and proximate result of the foregoing wrongful acts and the conspiracy to commit these acts, Precision has suffered and will continue to suffer irreparable harm to its competitive position, client/customer relationships, and in the value of its intellectual property,

technological advantages, economic expectancies, business reputation, and goodwill. Moreover, Defendants have been unjustly enriched by their conspiratorial actions.

83. As a result of the conspiracy, Precision has been damaged in an amount to be determined at trial.

84. The Defendants acted with actual malice toward Precision, or under a willful and wanton disregard for Precision's rights, warranting punitive damages.

85. The conspirators have caused and will continue to cause irreparable harm to Precision, with no adequate remedy at law, unless the Court enjoins such activity.

## COUNT VI

## CONVERSION

86. Precision repeats and alleges paragraphs 1 through 85 as though the same were set forth fully herein.

87. Precision has a property interest in and is entitled to exclusive possession of its confidential information, its pricing information, its internal documents, its marketing information, its customer lists, its marketing strategies, its forms, documents and other tangible information, including documents stored electronically but which could be printed.

88. As described above, the Employees exercised wrongful dominion and control over Precision's property by unlawfully copying and/or taking this information, retaining this information, and/or using it to help her perform her new job.

89. NaviSync likewise wrongfully possesses Precision's property on computers owned by it, and knew or should have known about the Employees' exercise of wrongful dominion and control over Precision's property. In addition, NaviSync is liable for the Employees' actions under the doctrine of respondent superior.

90.     Defendants' wrongful possession and use of Precision's property deprives Precision of its exclusive rights with regard to the property and diminishes the value of the property.   Defendants' wrongful possession and use of the property is inconsistent with Precision's rights in the property.

91.     As a direct and proximate result of the Defendants' conversion, Precision has suffered and will continue to suffer irreparable harm to its competitive position, client relationships, economic expectancies, business reputation, goodwill and the value of its property.

92.     As a result of Defendants' conversion, Precision has been damaged in an amount to be determined at trial.   Alternatively, Defendants have been unjustly enriched in an amount to be determined at trial.

93.     Upon information and belief, Defendants' conversion has been willful and malicious, warranting punitive damages.

## COUNT VII

### VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030)

94.     Precision repeats and alleges paragraphs 1 through 93 as though the same were set forth fully herein.

95.     Precision computers and computer networks are "protected computers," as defined in the Computer Fraud and Abuse Act (18 U.S.C. § 1030, et seq.) ("CFAA") through which electronic-mail transmissions are received, stored, and disseminated in interstate and/or foreign commerce or communication.

96.     As set out in greater detail above, the Employees intentionally used Precision's protected computers and computer network, without authorization or in a manner that exceeded

their authorized access to make or cause to be made an unauthorized copy, alteration, or deletion of information in violation of the CFAA.

97. By means of this conduct, the Employees injured Precision by improperly obtaining its valuable confidential information, trade secret information, and property, and using this information for purposes not authorized by Precision.

98. Upon information and belief, the Employees took these actions at the direction of NaviSync who conspired with the Employees for the purpose of causing Precision harm and to obtain a competitive advantage over Precision and therefore NaviSync is liable for the Employees' conduct.

99. The Employees' unauthorized copying of this information has caused Precision to suffer damages on each such occasion, including but not limited to the cost of responding to each offense, conducting a damage assessment, conducting investigations, other consequential damages, as well as profits lost and costs incurred.

100. The investigation of these acts is ongoing and, pursuant to 18 U.S.C. § 1030(a)(5)(B)(i), Precision has been damaged in an amount greater than \$5,000.

101. Pursuant to the Act, Precision is entitled to recover for its costs of suit, including forensic analysis fees, attorneys' fees, and other related costs.

## COUNT VIII

### NEW JERSEY COMPUTER RELATED OFFENSES ACT (N.J.S.A. 2A:38A-1 TO 6)

102. Precision repeats and alleges paragraphs 1 through 101 as though the same were set forth fully herein.

103. The Employees purposefully and knowingly accessed Precision's computers, computer systems, and computer networks, and downloaded, transmitted and/or deleted

Precision's files and confidential and proprietary information without authorization and/or in a manner that exceeded their authorization.

104. Upon information and belief, the Employees took these actions at the direction of NaviSync who conspired with the Employees for the purpose of causing Precision harm and to obtain a competitive advantage over Precision and therefore NaviSync is liable for the Employees' conduct.

105. The Defendants' conduct constitutes a violation of the Computer Related Offenses Act (N.J.S.A. § 2A:38A-1 et seq.) ("CROA").

106. As a result of the Employees' violation of CROA, Precision has suffered and will continue to suffer damages.

## COUNT VIII

### UNJUST ENRICHMENT

107. Precision repeats and alleges paragraphs 1 through 106 as though the same were set forth fully herein.

108. As a result of the Defendants' unlawful misappropriation of Precision's confidential information, trade secret information, and other property, the Defendants have been unjustly enriched at Precision's expense.

109. The property misappropriated by the Defendants has a high value and took years to compile and refine. Precision has invested significant dollars in research and development. The Defendants understand the value of this information and yet have not compensated Precision for this property.

110. The Defendants have saved significant time and dollars by unlawfully using Precision's information.

ACTIVE\32423127.v1-1/24/17

111.    To allow Defendants to obtain the benefit of this property would be inequitable and would allow them to profit from their wrongdoing.

112.    The Defendants should be required to disgorge any monies they have earned through their unlawful use of Precision's property and/or pay for the value of the property.

113.    Defendants should be required to pay a sum equivalent to the amount of money they have saved by relying on Precision's confidential information, and other property.

## COUNT IX

### TORTIOUS INTERFERENCE

114.    Precision repeats and alleges paragraphs 1 through 113 as though the same were set forth fully herein.

115.    Upon information and belief, Defendants have used and/or will use information misappropriated from Precision to identify and/or contact clients/customers or prospective clients/customers of Precision to coerce them to cease doing business with Precision and engage in business with NaviSync.

116.    Defendants utilized information that was misappropriated from Precision for the purpose of interfering with Precision's client/customer relationships.

117.    Defendants did so maliciously with the intent of harming Precision's economic advantage or reasonable expectation of an economic advantage.

118.    Precision has suffered and will continue to suffer damages as a result of Defendants' actions.

## COUNT X

### EMPLOYEE PIRACY

119.    Precision repeats and alleges paragraphs 1 through 118 as though the same were set forth fully herein.

120. Upon information and belief, NaviSync targeted the seven (7) Employees to convince them to leave Precision with the express purpose of harming Precision, who is a direct competitor.

121. NaviSync was aware or should have been aware that the departure of these employees would cause Precision immediate harm and impede its ability to service its clients.

122. NaviSync did so maliciously with the intent of harming Precision's economic advantage or reasonable expectation of an economic advantage.

123. Precision has suffered and will continue to suffer damages as a result of NaviSync's actions.

### COUNT XI

### FRAUDULENT CONCEALMENT

124. Precision repeats and alleges paragraphs 1 through 123 as though the same were set forth fully herein.

125. By letter, Precision notified the Defendants of the potential for litigation and demanded that all relevant information, including electronic data and metadata, be preserved for forensic inspection to determine the full scope of their wrongdoing.

126. The Defendants had a legal obligation to preserve and disclose this material evidence in connection with the threatened litigation.

127. Despite this obligation, Defendants intentionally or negligently caused the data and/or metadata to be permanently altered, thereby eliminating the potential for a full and complete analysis by Precision.

128. After Precision learned that Employees intentionally or negligently altered the data and/or metadata from the electronic storage devices of Defendant Condit, Precision immediately advised the Defendants not to repeat those steps with any other device.

129. Despite this explicit warning, the Employees caused the data and/or metadata on the other devices to be permanently altered, thereby interfering with the potential for a full and complete analysis by Precision.

130. Precision likewise warned NaviSync of its duty to secure and preserve the laptop computers that were assigned to the Employees by NaviSync.

131. Despite this warning, NaviSync allowed the laptops to continue to be used thereby permanently altering the data and/or metadata that they contain.

132. The data and/or metadata that was altered by Defendants is not available from any other source.

133. As a result of Defendants' conduct, Precision has been damaged by having to rely on an evidential record that does not contain the evidence that Defendants concealed.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs Precision Medicine Group, LLC and Precision for Value, LLC demand judgment against the Employees and NaviSync as follows:

(a) For injunctive relief prohibiting Defendants, for a period of two (2) years beginning on the date of the Court's injunction, from soliciting Precision's customers;

(b) For injunctive relief prohibiting NaviSync, for a period of two (2) years beginning on the date of the Court's injunction, from soliciting or pirating Precision's employees and its network of independent consultants and principal suppliers;

(c) For injunctive relief prohibiting Defendants from using any of the confidential and proprietary information misappropriated from Precision;

(d) For injunctive relief requiring Defendants to return Precision's property;

(e)    For injunctive relief requiring the Employees to cease employment with any competitor of Precision due to the inevitable disclosure of Precision's confidential and proprietary information;

(f)    For injunctive relief prohibiting Defendants from disparaging Precision or from using Precision's information to discuss Precision;

(g)    For compensatory and/or consequential damages that Precision has suffered and will continue to suffer as a result of the Employees' breach of the Agreements and Defendants' other unlawful activities;

(h)    For the cost of the investigation and recovery of the data misappropriated from Precision's protected computers;

(i)    For punitive damages;

(j)    For disgorgement of the salaries paid by Precision to the Employees during the period in which the Employees engaged in a breach of their duty of loyalty;

(k)    For restitution, in an amount to be determined at trial, for the value of the benefits received by the Defendants, or the amount the Defendants have been unjustly enriched by their unlawful acts or lawful acts through unlawful means;

(l)    For a reasonable royalty related to the value of the property unlawfully taken and used by Defendants;

(m)    For an adverse inference against the Defendants that the evidence that they negligently or intentionally destroyed was harmful to their defense and supported Precision's claims;

(n)    For pre- and post-judgment interest;

(o)    For Precision's costs and attorney's fees in bringing this action; and

(p)     For any other legal or equitable relief that the Court deems appropriate.

Dated: January 24, 2017

**FOX ROTHSCHILD LLP**
*Attorneys for Plaintiffs Precision Medicine Group, LLC and Precision for Value, LLC*

s/ Ian D. Meklinsky
Ian D. Meklinsky
Jonathan D. Ash
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, New Jersey 08648-2311
Tel: (609) 896-3600

## <u>DEMAND FOR JURY TRIAL</u>

Precision demands trial by jury on all issues triable to a jury.

Dated: January 24, 2017

**FOX ROTHSCHILD LLP**
*Attorneys for Plaintiffs Precision Medicine Group, LLC and Precision for Value, LLC*

s/ Ian D. Meklinsky
Ian D. Meklinsky

ACTIVE\32423127.v1-1/24/17

## L. CIV. R. 11.2 CERTIFICATION

Plaintiff, by its undersigned counsel, hereby certifies that the matters in controversy in this case are not, to the best of its knowledge and belief, the subject of any other action pending in any court or of a pending arbitration proceeding, nor is any such other action or arbitration proceeding contemplated.

Dated: January 24, 2017

**FOX ROTHSCHILD LLP**
*Attorneys for Plaintiffs Precision Medicine Group, LLC and Precision for Value, LLC*


s/ Ian D. Meklinsky
Ian D. Meklinsky